

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00418-CR

BRANDON KURTIS JEWELL                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

----------

## FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY
## TRIAL COURT NO. CCL2-12-0334

----------

## MEMORANDUM OPINION[1]

----------

Appellant Brandon Kurtis Jewell appeals from the trial court's denial of his motion to suppress. We affirm.

### Background Facts

On February 26, 2012, at approximately 2:30 a.m., Trooper Jacob Smith was driving on Interstate 20 in Parker County, Texas. Behind him, he saw a car

---

[1]*See* Tex. R. App. P. 47.4.

driven by Appellant that had blue headlights that "were probably bluer than the lights on [his] emergency lights." Smith believed that the lights were nonstandard and in violation of federal and state law. After allowing the car to pass, Smith observed the vehicle weave over the "fog line" separating the highway from the improved shoulder at least twice.[2]

Smith stopped Appellant based on the traffic violations that he observed and because he thought the driver might be sleepy or intoxicated. Appellant had bloodshot, glassy eyes and smelled of alcohol. Appellant admitted to drinking two or three beers that night, although Smith believed Appellant had drunk more than that. Smith administered four field sobriety tests, determined that Appellant was intoxicated, and arrested him.

During a jury trial, Smith testified that he pulled Appellant's car over and approached the vehicle. Appellant objected to any further testimony from Smith on the ground that there was no probable cause or reasonable suspicion to pull him over. The trial court overruled the objection. A jury found Appellant guilty of driving while intoxicated (DWI), and the trial court sentenced Appellant to 180

---

[2]The recording made by the patrol car camera during the traffic stop was admitted into evidence as State's Exhibit 1. This court has reviewed that recording and confirmed that Appellant drove on the improved shoulder to the right of the main traveled portion of the roadway. *See* Tex. Transp. Code Ann. § 545.058 (West 2011).

days jail time probated for 24 months, an $800 fine, court costs, community service, and completion of Alcohol Education and Victim Impact programs.[3]

Appellant filed a notice of appeal and now contends in his sole issue that the trial court erred in denying his oral motion to suppress because there was no reasonable suspicion to stop him.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the record is silent on the reasons for the trial court's ruling, or when there are no

___

[3]The punishment assessed was agreed to by the State, Appellant, and his counsel.

3

explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

**Discussion**

In his sole issue, Appellant argues that reasonable suspicion could not be based on Smith's observances of (1) his "fail[ing] to maintain a single lane of traffic" and (2) his "bluer than normal headlights."

A detention may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This

4

is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

Appellant argues that the State was required to establish the elements of a traffic violation in order for the trial court to find that valid reasonable suspicion existed to justify the stop. Specifically, Appellant argues that Smith's testimony could not support reasonable suspicion that he had violated section 545.060(a) of the transportation code because the State did not prove that Appellant unsafely moved out of his lane of traffic. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011) (stating that a driver may not move from his lane unless the movement can be made safely); *Fowler v. State*, 266 S.W.3d 498, 503–04 (Tex. App.—Fort Worth 2008, pet. ref'd). Appellant's argument, and the cases cited in support thereof, all regard a stop made based on section 545.060(a). The officer in the instant case never testified that he was relying upon section 545.060(a) as a basis for his stop; he testified that he witnessed Appellant driving on the improved shoulder, which is a violation of section 545.058.[4] Smith testified,

---

[4]Texas Transportation Code section 545.058(a), entitled "Driving on Improved Shoulder," provides,

> An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
> (1) to stop, stand, or park;

Q. Okay. Was the driving that you saw a violation of Texas law in itself?

A. Only when you drive over the shoulder. You can weave around it in your lane, you just can't cross the lines unless you use your turn signal or you're driving on the shoulder.

Q. This Texas law specified certain given situations where a person can drive on a shoulder?

A. Yes, sir.

Q. And did you see any of those circumstances that existed at that time?

A. No, sir.

Q. So you decided to pull the person over?

A. Yes, sir.

In the hearing outside the presence of the jury, the State argued that the stop was legal for multiple reasons, none of which was a violation of section

---

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

Tex. Transp. Code Ann. § 545.058(a).

6

545.060(a). The State said, "The officer also testified that this vehicle was driven on the shoulder. And it clearly stated that was a violation of the law unless certain circumstances existed, which he stated did not."

Unlike section 545.060, section 545.058(a) prohibits a driver from driving on an improved shoulder when doing so is not a necessary part of achieving one of the seven approved purposes, even when driving on the shoulder may be done safely. *See State v. Munsey*, 424 S.W.3d 767, 773 (Tex. App.—Fort Worth 2014, no pet.); *Thomas v. State*, 420 S.W.3d 195, 200 (Tex. App.—Amarillo 2013, no pet.) (holding that the traffic offense of driving on the improved shoulder supports an initial detention of a driver); *State v. Lockhart*, No. 07-04-00304-CR, 2005 WL 1838457, at *3 (Tex. App.—Amarillo Aug. 2, 2005, no pet.) (not designated for publication) (same); *Tyler v. State*, 161 S.W.3d 745, 748–49 (Tex. App.—Fort Worth 2005, no pet.) (holding that traveling on the shoulder was independently sufficient to provide probable cause to stop the driver). Nothing in this record shows that Appellant's driving on the improved shoulder was necessary to achieve one of the seven approved purposes, even if he was driving safely on the shoulder. *See Munsey*, 424 S.W.3d at 773. Smith articulated specific facts that support reasonable suspicion that Appellant violated section 545.058(a) and, therefore, the trial court did not err by denying Appellant's oral motion to suppress.

7

Furthermore, the testimony establishes reasonable suspicion of driving while intoxicated. The court of criminal appeals has explained the standard for warrantless traffic stops thusly:

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 21. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.
>
> . . . .
>
> . . . [T]ime of day is a relevant factor in determining reasonable suspicion. . . . Similarly, . . . location near a bar district where police have made numerous DWI arrests is also a relevant factor in determining reasonable suspicion.

*Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (some citations omitted). Thus, an officer may stop a driver based on a reasonable suspicion of DWI even when the driver has not violated a traffic law and has not endangered other drivers. *See James v. State*, 102 S.W.3d 162, 171–72 (Tex. App.—Fort Worth 2003, pet. ref'd) (distinguishing stops made based "only upon observation of a traffic offense" from those in which the officer believes a driver might be impaired, such as by intoxication); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Smith testified that he decided to stop Appellant's vehicle after he saw Appellant repeatedly drive over the fog line because he "thought possibly this person was pretty sleepy and needed to be woke[n] up or may be intoxicated." He testified that he witnessed Appellant's driving around 2:30 in the morning. He also stated that it was illegal to cross lane lines without using a turn signal or to drive on the shoulder unless under specific circumstances, none of which were present at the time of the stop.

These facts, given the totality of the circumstances and viewed in the light most favorable to the trial court's ruling, support the trial court's conclusion that Smith had reasonable suspicion to stop Appellant. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (holding that a rational inference from observing a car "weaving in and out of his lane several times, over a short distance, late at night" was that the driver was intoxicated and that such circumstances justified an investigative stop); *Dunkelberg v. State*, 276 S.W.3d 503, 506–07 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that stop based on suspicion of DWI was reasonable based on "the manner in which the vehicle was operated in conjunction with the time of night"); *James*, 102 S.W.3d at 172 ("Erratic or unsafe driving may furnish a sufficient basis for a reasonable suspicion that the driver is intoxicated even absent evidence of violation of a specific traffic law."); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that officer's suspicion that driver was falling asleep or intoxicated was reasonable based on observations of driver driving

9

slowly and twice crossing the lane stripe even "assuming Officer Beauchamp's testimony may not have established a reasonable suspicion that appellant had violated a traffic law"). We therefore hold that the trial court did not err by denying Appellant's oral motion to suppress. We overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 10, 2014